ANNA S. PATTON, CHAS. A. COHENOUR, Administrator, Substituted, Plaintiff, Appellee, v. CLAUDIA LUND, Appellant.

Evidence: GENUINENESS OF SIGNATURE: *Prima facie proof.* Prima facie proof of the genuineness of defendant's signature to a note is made by the fact of the mortgage securing it, and signed and acknowledged by her, describing the note as having been signed by her.

EXCLUSION: *Harmless.* It being practically conceded throughout the trial that defendant received none of the consideration of the note, the genuineness of which she denies, the refusal to permit her to show that she received none of it, though error, is harmless.

BEST RECOLLECTION: *Competency.* Testimony of the witness who took defendant's acknowledgement to a mortgage, that he

thought defendant's signature to the note secured thereby was made in his presence; that was his best recollection—is competent.

*Experts.* Experts may explain similar characteristics found in the signature in dispute and in other signatures admitted to be genuine.

Facts aiding recollection. A witness who testifies to the execution of papers may state a conversation that he had relative thereto, that he claims fixed his attention thereon, and caused him to remember the circumstances.

*Relevancy.* Testimony of defendant that her husband had for a number of years and at the time of the execution of the notes in controversy, been engaged in fraudulent transactions, and had forged notes and mortgages frequently, is not admissible on the question of the genuineness of her signature.

**Instructions :** expert's testimony: *Requests.* An instruction that the jury may give such weight to the testimony of experts, and to their own judgment, from comparison of admitted signatures with the one in dispute, as they think the same is entitled to, in connection with the other evidence, is correct so far as it goes; and if defendant desires an instruction that it shall not, in itself, be allowed to overcome positive and direct evidence of credible witnesses, he should ask therefor.

**Misconduct in Argument:** improper matter stated in response. Remarks of plaintiff's counsel in argument that defendant's husband left her $14,000, and that she was not a poor woman, being in response to a statement by her counsel that she was a poor widow, and that plaintiff was taking advantage of her, cannot be complained of.

**Review on Appeal:** point first made in appellant's reply. The point that the verdict is excessive, being made in appellant's reply argument, but not in the opening argument. will not be considered.

Objection below: *Verdict excessive.* The point that the verdict was excessive, not having been called to the attention of the trial court, will not be considered on appeal

Exceptions taken: *Correction below of record after appeal.* A correction of the record in the lower court, after appeal taken to show that no exception was taken to a certain ruling, will not be disturbed, in the absence of a clear showing that the trial judge was wrong in his finding.

*Appeal from Kossuth District Court.*—Hon. W. B. Quarton, Judge.

THURSDAY, MAY 23, 1901.

ACTION at law on a promissory note. Defendant de-
nies that she signed the instrument, and claims that what
purports to be her signature thereto is a forgery. Trial to a
jury. Verdict and judgment for plaintiff, and defendant
appeals.—*Affirmed.*

*E. V. Swetting, W. L. Joslyn,* and *Carr & Parker* for
appellant.

*Clarke & Cohenour,* and *Sullivan & McMahon* for ap-
pellee.

DEEMER, J.—The action is on a promissory note, pur-
porting to be signed by defendant. Defendant denies the
signature under oath, and the burden was thereby cast on
plaintiff to establish its genuineness. The note was secured
by a mortgage on certain land, and the notary who took the
acknowledgment to the mortgage testified that, to the best of
his recollection, defendant signed the note, as well as the
mortgage, in his presence. There was also evidence from ex-
perts, who made comparison of the signature in question with
others admitted to be genuine, to the effect that the signature
was made by defendant, and these other signatures were
sent to the jury for it to make comparison with the one in
dispute. Against this was the direct evidence of defendant
that she did not sign the note. It is admitted that she re-
ceived no part of the consideration of the note, and it is ar-
gued that there was no necessity for signing the note. In
view of this evidence we cannot say that the verdict for
plaintiff has no support in the evidence. Moreover,
the mortgage, which was duly signed and acknowl-
edged, described the note as having been signed by the
defendant. This, in itself, made a *prima facie* case for the
plaintiff. *Mixer v. Bennett,* 70 Iowa, 331.

II. It is claimed that the instruments used for com-
parison were not properly identified. This contention has

no basis in the record. The signatures to each of the standards were shown to be in the defendant's handwriting, or were admitted by her. Defendant offered to show that she received no part of the consideration for the note, but was not permitted to do so. As this was practically conceded all through the trial, no prejudice resulted therefrom, although the ruling was erroneous.

The witness who took the acknowledgment to the mortgage testified that he thought defendant's signature to the note was made in his presence. That was his best recollection. Defendant moved to strike his answer because incompetent. The motion was overruled. The ruling was correct. Underhill, Evidence, section 186. He was also asked what the mortgage and note were left with him for; and he answered, "For Mrs. Lund to sign." The question eliciting the answer was not objected to, and no error can be predicated on the ruling.

Some of the experts were permitted, over defendant's objections, to explain similar characteristics found in the signature in dispute and in other signatures admitted to be genuine. The ruling was manifestly correct.

The witness who took the acknowledgment, and who testified to the signature to the note, related a conversation had with Mrs. Lund's husband, regarding the execution of the mortgage, that he claimed fixed his attention on the execution of the papers, and caused him to remember the circumstances. This evidence was objected to, and the objection was overruled. There was no error in the ruling, but, if error be conceded, no prejudice resulted to the defendant thereby.

Defendant offered to prove that C. L. Lund, her husband, had for a number of years, and at the time of the execution of the notes in controversy, been engaged in fraudulent transactions, and had forged notes and mortgages frequently. This evidence was properly rejected. The mere fact that he forged other notes would throw

no light on the question at issue in this case, to-wit, was the signature of Mrs. Lund genuine? Moreover, the witness did not show himself qualified to speak.

III.    Defendant asked an instruction relating to the weight to be given the evidence of experts, that was copied from the rule announced in *Whitaker v. Parker,* 42 Iowa, 585.   The instruction was refused, but, as the record (which was corrected in the district court after this appeal was taken) affirmatively shows that no exception was taken, the point cannot be taken into consideration.   In lieu of the instruction asked, the trial court gave the following: "Our statute provides that evidence respecting handwriting may be given by experts by comparison, or by comparison by the jury with writings of the same person which are proved to be genuine.   Evidence of this character has been introduced upon this trial, and it is for you to say how much weight shall be given to such testimony, taking into consideration the amount of skill possessed by the witness.   But while it is proper to consider such evidence, and to give it such weight as you think it justly entitled to, yet it is proper to remark that it is of the lowest order of evidence, or evidence of the most unsatisfactory character, but it is most useful in cases of conflict between witnesses as corroborating testimony.   However, upon this question you will notice that the section of the statute above quoted provides that you may compare the signature in dispute with the writings of the defendant which are proved to be genuine, and in considering this question, and doing this, you may and should use your own judgment from comparison of such admitted signatures with the one in controversy in determining whether or not the defendant actually signed the note sued on, and it is your duty and privilege to give your own comparison, and knowledge gained from such comparison, such weight as you think it entitled to in connection with the other evidence introduced upon the trial upon this question."   This instruction is correct as far as it goes, and contains nothing prejudicial to

defendant. It seems to have been based on section 4620 of the Code, and to a certain extent, at least, is sustained by *Hammond v. Wolf,* 78 Iowa, 227. If counsel desired an instruction to the effect that it should not in itself be allowed to overcome positive and direct evidence of credible witnesses, he should have so asked. In the absence of such a request, there was no error.

IV. During the closing argument, plaintiff's counsel said to the jury that defendant's husband left her $14,000 life insurance, and that she was not a poor widow. This was a response to a statement made by her counsel that she was a poor widow, and that plaintiff was taking advantage of her. Defendant's counsel was the first to offend, and she will not be heard to complain. *Miner v. Lorman,* 66 Mich. 530 (33 N. W. Rep. 866; *Stratton v. Dole,* 45 Neb. 472 (63 . W. Rep. 880); *Sweet v. Railroad Co.,* 87 Mich. 559 (49 N. W. Rep. 882). In appellant's reply argument it is claimed that the verdict is excessive. The point is not made in the opening argument, and it will not, therefore, be considered. Moreover, it does not appear that the verdict is for more than the amount due on the note. But, as the point was not called to the attention of the trial court, it cannot be considered here. *Hopper v. Railway Co.,* 91 Iowa, 650.

We have referred to the fact that, after the case was appealed plaintiff secured a correction of the record in the district court, so as to show that no exception was taken to the refusal to give the instruction asked. To the order so made the defendant excepted, and appealed, and it is now contended that it was erroneous, and should be reversed. The finding that no exception was taken, while not conclusive, bears the weight of the trial judge's conclusion, and should not be disturbed, in the absence of a clear showing of error. There is no such showing in this case. The judgment and order appealed from are each AFFIRMED.